UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NORTHWELL HEALTH, INC.,
                          Plaintiff,

    -against-

BLUECROSS BLUESHIELD OF TENNESSEE, INC.,
                          Defendant.
------------------------------------------------------------------X
NORTHWELL HEALTH, INC.,
                          Plaintiff,

    -against-

HEALTH CARE SERVICE CORPORATION,
                          Defendant.
------------------------------------------------------------------X
NORTHWELL HEALTH, INC.,
                          Plaintiff,

    -against-

BLUECROSS BLUESHIELD OF FLORIDA, INC.,
                          Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 23-600 (GRB)(ARL)

CV 23-602 (GRB)(AYS)

CV 23-1765 (GRB)(AYS)

**GARY R. BROWN, United States District Judge:**

Presently before the Court is a joint motion to dismiss filed in each of the three above-listed cases. Docket Entry ("DE") 36.[1] For the reasons stated herein, that motion is GRANTED in part and DENIED in part.

---

[1] All Docket Entry citations refer to documents filed in *Northwell Health, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, case number 2:23-cv-600(GRB)(ARL). Per the Court's request, defendants in the three cases filed a joint motion to dismiss, and the legal and factual issues are almost identical in each case. *See* DE 37.

1

**Factual Background**

All factual allegations are taken from the Amended Complaint and assumed to be true for the purposes of deciding this motion.  Plaintiff Northwell Health is a New York not-for-profit corporation that operates hospitals and health care facilities.  Amended Complaint, DE 21 ¶ 1.  Beginning in 2000, plaintiff has maintained a contractual relationship with Empire Blue Cross Blue Shield HMO ("Empire"), a health insurance provider based in New York, by which plaintiff agreed to provide medically necessary services for Empire's patients and Empire agreed to reimburse plaintiff according to a payment schedule.  *Id.* ¶¶ 6-8.  The basic contours of this arrangement have remained the same through the years, but the most current version of their agreement is contained in a 2008 document titled Participating Practitioner Group Agreement (hereinafter the "Provider Agreement") and its subsequent amendment.  *Id.* ¶ 18.

Empire is a member of the Blue Cross Blue Shield Association ("BCBSA"), a national organization that maintains the Blue Cross Blue Shield trademarks and licenses them to various entities, including Empire; these entities are collectively known as "Blue Card Plans."  *Id.* ¶¶ 14-21.  The Provider Agreement states that members of out-of-state Blue Card Plans "shall be entitled to access the services of [Northwell] Providers that participate in the Empire network" at the same rates as Empire members.  *Id.* ¶ 21 (quoting Provider Agreement, DE 65 at 10).  Plaintiff alleges that, upon rendering service to a member of an out-of-state Blue Card Plan, it is that plan's responsibility to compensate plaintiff according to the terms of the Provider Agreement.  *Id.* ¶¶ 29-31.  The Blue Card Plan is required to submit payment to Empire, which

then, acting only "as an agent for" the plan, provides the payment to plaintiff for any valid claim.² *Id.* ¶ 34.

The defendant in each of the three cases addressed by this opinion is a Blue Card Plan operating a Blue Cross Blue Shield entity in another state—specifically, BlueCross BlueShield of Tennessee, Inc., Blue Cross Blue Shield of Florida, Inc., and Health Care Service Corporation (based in Illinois). Plaintiff alleges that it provided healthcare services to customers of each of the three defendants, but that defendants have wrongfully denied or underpaid plaintiff's claims. Plaintiff filed suit against each defendant in state court; each defendant timely removed to this Court. Defendants filed a joint motion to dismiss.

**Discussion**

*Standard of review*

The Court has applied the well-trodden standard, recently discussed in *Potter v. Inc. Vill. of Ocean Beach*, 2024 WL 3344041 at *4 (E.D.N.Y. July 9, 2024), in deciding defendants' motion to dismiss. In sum, assuming the allegations of the complaint to be true and drawing inferences in favor of the plaintiffs, the factual matters asserted must be facially plausible and support the propounded claims.

---

² Oddly, even though Empire is a party to the critical contracts and the entity at least nominally responsible for transmitting payments to plaintiff, Empire is not a party to any of the suits currently pending before the Court, nor has plaintiff's counsel provided an explanation for Empire's absence. On April 16, 2024, the Court issued an order to show cause as to whether Empire was a required party under Fed. R. Civ. P. 19. Both plaintiff and defendants submitted briefs positing that Empire is not a required party and that the Court should proceed to decide the motion to dismiss. This position is somewhat troubling, particularly as Empire's presence in the suit would implicate this Court's subject matter jurisdiction. However, given that none of the current parties in the suit has alleged any prejudice from Empire's absence, nor has Empire sought to intervene, the Court is prepared to proceed without Empire, albeit with some reservations.

*Breach of contract claims*

*Contractual language alone cannot bind nonsignatories to a contract*

Plaintiff initially argues that defendants, who are not signatories to any contract between plaintiff and Empire, are nevertheless bound by the Provider Agreement because of provisions that purport to impose obligations on third parties, including Blue Card Plans such as defendants. However, "[i]t goes without saying that a contract cannot bind a nonparty," *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)), and "[l]iability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties." *See CDJ Builders Corp. v. Hudson Grp. Const. Corp.*, 889 N.Y.S.2d 64, 65 (N.Y. App. Div. 2d Dep't 2009) (finding that nonsignatory property owners were not parties to a contract between prime contractor and subcontractor). "In determining whether the parties entered into a contractual agreement…it is necessary to look [ ] to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Brown Bros. Elec. Contractors v. Beam Const. Corp.*, 41 N.Y.2d 397, 399, 361 N.E.2d 999 (N.Y. 1977). "Generally, a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Alzal Corp. v. I.F.C. Int'l Freight Corp.*, No. 13-CV-2577 (PKC)(JO), 2015 WL 1298585, at *6 (E.D.N.Y. Mar. 23, 2015) (quoting *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991)).

Here, it is undisputed that there is no written contract signed by both plaintiff and defendants. *See* DE 21 ¶ 51. Instead, plaintiff points to various provisions of its agreements with Empire, particularly portions of the Provider Agreement relating to "Payors." *See* DE 53 at 4-5. As defined in that contract, "Payor means the entity that is legally responsible for payment

4

of Medically Necessary Services under the terms of the Health Benefit Program": in other words, the insurance company providing coverage to the patient, which, in some instances, includes defendants. DE 65 at 2. The Provider Agreement refers to "Payor Obligations" that suggest that the Payor, rather than Empire, must compensate Northwell for services rendered to the Payor's customers. *Id.* at 6 ("the applicable Payor shall not deny a claim for Medically Necessary services"); 13 ("Payor is the sole party responsible for payment of compensation to Provider."). Plaintiff asserts these obligations indicate an intent to bind Payors, including defendants, to the agreement; defendants counter with other provisions in the contract that suggest that it is ultimately Empire who is responsible for payments to Northwell. *See id.* at 5 ("All claims for services to Other Plans' members shall be submitted to Empire in accordance with the terms of this agreement…. Empire's payment, plus the amount of any applicable cost-sharing…shall constitute payment in full to the provider.").

However, the Court need not resolve potential ambiguities in the contract because contractual language or actions by contracting parties, standing alone, cannot bind a nonsignatory that has not otherwise manifested assent to it. *See Alzal*, 2015 WL 1298585, at *7 (finding that an allegation that a nonsignatory shipping company was a party to a bailment contract was implausible when based solely on plaintiff's contract with a logistics corporation, even though the contract anticipated that the corporation would retain the services of a shipping company); *see also TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15-CV-3371 (SAS), 2015 WL 4461769, at *5 (S.D.N.Y. July 21, 2015) ("TransformaCon does not state how a presentation purporting to assign responsibilities to Active at a meeting that Active employees did not attend could show Active's intent to be bound."). The fact that the Provider Agreement contemplates obligations on third parties is curious, but it does not suspend the requirement that

5

defendants may only be found liable under the contract if there is some basis in their words or conduct to hold them liable to the contract.  *See Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) ("While Thomson was aware that the Working Agreement purported to bind it as an 'affiliate' of Rediffusion, at no time did Thomson manifest an intention to be bound by that Agreement."); *see also Jacobson v. Televida, Inc.*, No. 04CV163 (SLT) (MDG), 2005 WL 3609101, at *5 (E.D.N.Y. Aug. 10, 2005) ("[Plaintiff] does not articulate how nonsignatories to a contract can be held liable under a personal guarantee provision in an agreement they did not sign, or support this claim with any case law.").  Accordingly, the Court must consider whether plaintiff has plausibly alleged that defendants agreed to be bound to the Provider Agreement by some method other than signing the contract.

> *Plaintiff has plausibly alleged that defendants manifested an intent to be bound by the Provider Agreement*

Plaintiff contends that even if the terms of the Provider Agreement alone do not bind defendants, they should be liable under a variety of other theories—most importantly, that defendants assumed the obligations of that contract.  "A non-signatory to a contract may be bound to the terms of an agreement if the non-signatory is found to have manifested an intent to be bound by the contract," *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 260 (S.D.N.Y. 2022) (internal quotations omitted), as determined by "the totality of its expressed words and deeds."  *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 397 (S.D.N.Y. 2009).  Although this rule is most often applied when the non-signatory is an "alter ego" of one of the contracting parties, that is not a requirement, and it can be invoked whenever the non-signatory "indicates through performance of [the contract's] terms or other unequivocal acts that it intends to adopt the contract."  *Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.*, No. 05-CV-7776 (KMK), 2007 WL 1701813, at *5 (S.D.N.Y. June 12, 2007).

6

Here, plaintiff argues that defendants' "repeated acceptance of both the benefits and the obligations" of the Provider Agreement demonstrated their intent to be bound to that contract. *See* DE 53 at 16.  Plaintiff highlights that defendants' patients received treatment at plaintiff's facilities and defendants remitted payment (via Empire) in a manner that arguably conformed with the Provider Agreement.  *See, e.g.*, DE 21 ¶ 28.  In addition, barring the disputes about the validity of certain claims that gave rise to this lawsuit, the payments provided by defendants matched the rate schedule listed in the Provider Agreement.  *Id.* ¶¶ 30-32.  Drawing all inferences in plaintiff's favor, the Court concludes this is sufficient to allege that defendants manifested an intent to be bound to the contract.  *See also Northwell Health, Inc. v. Blue Cross & Blue Shield of S.C.*, No. 23-CV-00603 (JS)(SIL), 2024 WL 3823201, at *7 (E.D.N.Y. Aug. 13, 2024) (reaching same conclusion in a case involving the same plaintiff, same contractual documents, and a similarly situated Blue Card defendant).

However, defendants raise valid concerns that cast some doubt on plaintiff's allegations. Specifically, plaintiff admits that defendants did not have access to the Provider Agreement prior to this lawsuit,[3] meaning that if defendants manifested an intent to be bound, they did so without

---

[3] In fact, plaintiff failed to share these documents even within the context of this litigation until ordered to do so by this Court.  The contracts at issue have been designated "attorneys' eyes only," preventing defendants' in-house counsel from accessing them, DE 44 at 9, and the versions filed under seal and provided to the Court contained significant redacted portions, as evidenced by an excerpt of the 2008 Provider Agreement attached below:

7

viewing the contract or having precise knowledge of its contents—a dubious proposition. Accordingly, the parties are directed to proceed to discovery, focused on the issue of what, if any objective manifestations of intent defendants made to be bound to plaintiff's contracts.

Although plaintiff concedes that there is no contract to which both plaintiff and defendants are signatories, plaintiff has plausibly, albeit thinly alleged that defendants manifested an intent to be bound to the Provider Agreement. The Court therefore denies defendants' motion to dismiss as to plaintiff's breach of contract claims.[4]



DE 43-2 at 34–35. At the Court's request, plaintiff submitted unredacted copies of these agreements to the Court and defendants' attorneys, but no version, whether redacted or unredacted, has been provided to defendants' in-house counsel.

[4] Defendant BlueCross BlueShield of Tennessee, in addition to joining in the other defendants' arguments, posits that this Court lacks personal jurisdiction over it. *See* DE 51 at 29–30. However, "[p]rior to discovery, a plaintiff may defeat a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(2)] based on legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Here, plaintiff has plausibly alleged that BCBS of Tennessee became a party to the Provider Agreement, which states "any action with respect to this Agreement shall be solely and exclusively brought and tried in a court of competent jurisdiction in the State of New York," which would be sufficient to establish personal jurisdiction for this action. DE 43-2 at 20. Although it remains to be seen whether defendants in fact manifested an intent to be bound to the Provider Agreement, since that issue cannot be resolved at a motion to dismiss, neither can the personal jurisdiction question. *See, e.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85–86 (2d Cir. 2013) (denying pre-discovery Rule 12(b)(2) motion based on a venue provision in a contract purportedly signed by the defendant, despite significant evidence that the contract was a forgery, but noting that the defendant could raise the issue again following discovery).

### *Third-party beneficiary claims*

Plaintiff next contends that it is a third-party beneficiary of defendants' agreements with BCBSA and has a right to sue under those contracts. "It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed." *County of Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 63 (2d Cir. 1984) (citing *Lawrence v. Fox,* 20 N.Y. 268 (N.Y. 1859)). To successfully allege such status as a third-party beneficiary, a plaintiff must establish:

> (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.

*Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (quoting *State of Cal. Pub. Employees. Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35 (N.Y. 2000)). Courts applying New York law have been inconsistent as to whether the intent to benefit the third party must be apparent from the language of the contract or whether it may be determined external evidence. *Compare Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (N.Y. 1985) (a third party may recover on a contract only if "no one other than the third party can recover if the promisor breaches the contract or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party"), *with Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991) ("In determining third party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as the agreement.").

Here, plaintiff argues it is a third-party beneficiary of defendants' license and membership agreements, by which defendants allegedly agreed to "comply with the Membership Standards" of BCBSA and "effectively and efficiently participate in the Blue Card Program."

9

*See* DE 53 at 19. However, plaintiff apparently did not have access to these agreements until defendants provided them, at the Court's request, after the present motion was briefed. *See* Electronic Order dated April 16, 2024. Plaintiff also alleges that there may be other pertinent contracts defendants are parties to and requests limited discovery to determine whether plaintiff is an intended beneficiary of any of those agreements. Given the importance of this issue and plaintiff's inability to access key documents up to this point, the Court agrees that this claim should not be resolved until plaintiff has had the chance to conduct discovery on this issue. *See Bild v. Konig*, No. 09-CV-5576 (ARR)(VVP), 2011 WL 1563576, at *2 (E.D.N.Y. Apr. 25, 2011) (denying motion to dismiss as to a third-party beneficiary claim because "the parties have not submitted a complete version of the [ ] Agreement"). As such, defendants' motion is denied as to plaintiff's third-party beneficiary claims.

### *Unjust enrichment claims*

Finally, plaintiff asserts that defendants have been unjustly enriched because their patients have received services from plaintiff, and defendants have failed to fully reimburse plaintiff for those services. In New York, an unjust enrichment claim requires a showing that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 652 F.3d 333, 339 (2d Cir. 2011). Unjust enrichment is "a quasi-contract claim…the law creates in the absence of any agreement," *Diesel Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011), and may be asserted in the alternative only "[w]here there is a bona fide dispute as to whether a relevant contract exists or covers the disputed issue." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (collecting cases). By contrast, "the existence of a valid and enforceable written contract

governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Diesel Props S.r.l.*, 631 F.3d at 54 (quoting *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (N.Y. 1987)).

Here, the Provider Agreement submitted by plaintiff clearly covers the subject matter of the dispute, and plaintiff has plausibly alleged that defendants are parties to that agreement. Therefore, plaintiff's unjust enrichment claims are dismissed as duplicative of the breach of contract claims.

### Conclusion

For the reasons stated herein, defendants' motion is GRANTED as to plaintiff's unjust enrichment claims and DENIED as to plaintiff's breach of contract and third-party beneficiary claims. The parties are directed to proceed to discovery with the assigned magistrate judges.[5]

**SO ORDERED.**

Dated: Central Islip, New York
December 13, 2024

/s/Gary R. Brown
GARY R. BROWN
United States District Judge

---

[5] Given the important role Empire allegedly plays in the payment remittance process, the parties are directed to include Empire in the discovery process. Future requests to delay these cases based on the inaccessibility (or redaction) of relevant documents—whether belonging to plaintiff, defendants, or Empire—will not be tolerated.

11